**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Daniel W. Miles, H. George Hamacher,
and Nancy Tavernier

      v.                              Civil No. 05-cv-56-JM

W. John Funk, Michael Ramsdell,
Gallagher, Callahan & Gartrell, P.A.


**O R D E R**


The Court dismissed Count I of the Complaint, which is the
only Count that asserts a cause of action under federal law, in
an Order dated May 30, 2006. See Document No. 46. In accordance
with this Court's Order to Show Cause, the parties have since
briefed the issue of whether the Court has subject matter
jurisdiction over the Plaintiffs' eleven state law claims. The
Court now dismisses all of the remaining Counts in the Complaint.

Standard of Review

Federal courts are obligated to ensure that they have
jurisdiction to decide the cases before them even if the parties
do not dispute the court's jurisdiction. See McCulloch v. Velez,
364 F.3d 1, 5 (1st Cir. 2004) ("It is black-letter law that a
federal court has an obligation to inquire sua sponte into its

own subject matter jurisdiction"); Prou v. United States, 199 F.3d 37, 45 (1st Cir. 1999) ("the question of subject-matter jurisdiction is always open: courts at every stage of the proceedings are obligated to consider the issue even though the parties have failed to raise it").  The jurisdictional issue should be considered even when it appears that the defendant would easily prevail on the merits.  Hardemon v. City of Boston, 144 F.3d 24, 25-26 (1st Cir. 1998) (citing Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 (1998)).

"[D]etermining whether a case belongs in federal court should be done quickly, without an extensive fact-finding inquiry."  Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001); see also Coventry Sewage Assocs. v. Dworkin Realty Co., 71 F.3d 1, 4 (1st Cir. 1995) ("preliminary jurisdictional determinations should neither unduly delay, nor unfairly deprive a party from, determination of the controversy on the merits").  When a plaintiff seeks to invoke the court's diversity jurisdiction, "the [amount in controversy] claimed by the plaintiff controls if the claim is apparently made in good faith."  St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288 (1938) (footnotes omitted); see also Spielman v. Genzyme

2

<u>Corp.</u>, 251 F.3d 1, 5 (1st Cir. 2001) ("Under <u>St. Paul</u>, a plaintiff's general allegation of damages that meet the amount requirement suffices unless questioned by the opposing party or the court.").  Where the plaintiff's general allegation of damages is questioned, however, "the party seeking to invoke jurisdiction has the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount." <u>Spielman</u>, 251 F.3d at 5 (quoting <u>Dep't of Recreation and Sports v. World Boxing Ass'n</u>, 942 F.2d 84, 88 (1st Cir. 1991)).  The Supreme Court has directed that:

> if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount . . . the suit will be dismissed.

<u>St. Paul</u>, 303 U.S. at 289.

<u>Background</u>

Plaintiffs Daniel W. Miles, H. George Hamacher and Nancy Tavernier (collectively "the Miles plaintiffs") allege that the federal court has diversity jurisdiction over their state law claims in this action under 28 U.S.C. § 1332(a)(1).  There is no dispute that the Miles plaintiffs and Defendants W. John Funk,

Esq., Michael Ramsdell, Esq., and the law firm of Gallagher, Callahan & Gartrell, P.A. (collectively "the Funk defendants") are citizens of different states.  The Miles plaintiffs allege generally that "the matter in controversy exceeds a value of $75,000, exclusive of interests and costs."  Compl. at 2.

The Miles plaintiffs' Complaint is thirty-seven pages long without counting the attachments.  They allege, among other things, that the Funk defendants committed legal malpractice, negligence, and fraud in connection with the settlement of a New Hampshire state court case that was litigated in Belknap County Superior Court.  The state court case began with the filing of a Bill in Equity dated November 28, 2000 seeking injunctive relief, damages, and attorney's fees against, among others, Patrick Basile, Village of Winnipesaukee Timeshare Owners Association ("VWTOA") and Lakes Region Management Company.  See Pls.' Statement of Undisputed Facts, Ex. B ("Bill in Equity").  The respondents were alleged to have mismanaged the VWTOA.

The state court case was filed by the Funk defendants' predecessor counsel.  The caption of the Bill in Equity states that the case was brought by:

Clarice Neumann, individually and
On behalf of Similarly Concerned members of the Village

4

Of Winnispeaukee Timeshare Owners Association
<u>Id.</u> at 1.  Clarice Neumann is the only named "Petitioner" under
the heading "The Parties." <u>Id.</u> at 4, ¶1.  The state court case
was settled in March 2002 on terms that the Miles plaintiffs
found to be in direct conflict with their best interests.

The Miles plaintiffs each allege in the Complaint that he or
she owns timeshare weeks at the Village of Winnipesaukee "and is
therefore a Concerned Member of the Village of Winnipesaukee
Timeshare Owners Association."  Compl., ¶¶ 1-3.  Miles owns two
timeshare weeks.  Hamacher owns three timeshare weeks.  Tavernier
owns two timeshare weeks.  The Miles plaintiffs allege that:

> This matter arises from the Defendants' legal
> representation of certain owners of timeshares at the
> Village of Winnipesaukee Timeshare Condominium,
> collectively known as the Similarly Concerned Members
> of the Village of Winnipesaukee Timeshare Owners
> Association (the "Concerned VWTOA Members").

Compl., ¶ 7.  They allege that Clarice Neumann was a "Concerned
Member." <u>Id.</u>, ¶ 8.  They further allege that Clarice Neumann
agreed to serve as the Concerned VWTOA Members' spokesperson, and
to fund their legal representation. <u>Id.</u>, ¶¶ 8-9.  The Funk
defendants do not deny that they represented Clarice Neumann in
the state court case.  They maintain, however, that at all times
Clarice Neumann was their only client and that they owed no

duties to the Miles plaintiffs.

The instant action was not brought as a class action or as a derivative action.  The Miles plaintiffs do not allege any basis in the Complaint for a finding that they have standing to recover damages on behalf of anyone other than themselves.  Since there are no allegations in the Complaint that specify the damages that the Miles plaintiffs suffered individually, the Court ordered them "to make a showing in writing, supported by competent evidence, from which the Court may reasonably conclude that it is not a legal certainty that the Plaintiffs' state law claims involve less than the amount required to establish diversity jurisdiction."  Document No. 46.

<u>Discussion</u>

In a sixteen-page memorandum, the Miles plaintiffs argue that six different theories support a finding that the amount in controversy requirement for diversity jurisdiction is satisfied in this case.  <u>See</u> Document No. 47 at 3-15.  The Court addresses the merits of their arguments next.

I.   <u>Direct Malpractice</u>

A.   <u>The Value of the Equitable Relief Sought</u>

The Miles plaintiffs argue that they have a direct legal

6

malpractice claim against the Funk defendants because they alleged that the Funk defendants caused them to forever lose whatever rights and recoveries they might have obtained in the state court litigation.  Therefore, they argue, the Court must consider the potential value of their claims in the state court case in determining whether the amount in controversy requirement for diversity jurisdiction is satisfied.

The Miles plaintiffs do not specify their individual monetary damages at issue in the state court case in their memorandum.[1]  Rather, they argue that the Court must consider the value of the equitable relief that was sought in the state court case.[2]  The Miles plaintiffs argue that since they value the equitable relief sought in the state court case at more than $75,000 the Court should find that the amount in controversy

_____

[1]The Funk defendants argue in their memorandum on the jurisdictional issue that even if the Miles plaintiffs could assert a pro rata share of the damages allegedly suffered by the VWTOA, the Miles plaintiffs' assertions during discovery show that their pro rata damages would be between $1,000 and $2,000. See Document No. 49, ¶ 4.

[2]The Miles plaintiffs allege in the Complaint that Clarice Neumann and Daniel Miles stated explicitly to attorneys Funk and Ramsdell at their first meeting "that their litigation goals included securing an independent, competent Board of Directors for the Timeshare Association and a fiscally accountable management company."  Compl., ¶ 14.

7

requirement for diversity jurisdiction is met in this case.

In actions seeking declaratory or injunctive relief the value of the right that the plaintiff seeks should be considered in determining whether the amount in controversy requirement has been satisfied.  See Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 347 (1977).  The Miles plaintiffs cite three cases where that principle was applied in cases arising in the First Circuit.  See Amalgamated Transit Union v. Greater Portland Transit Dist., 589 F.2d 1, 9 (1st Cir. 1978) (union sued in its representative capacity to vindicate a right of employees to binding arbitration of the disputed terms of a collective bargaining agreement); Grotzke v. Kurz, 887 F. Supp. 53, 56–57 (D.R.I. 1996) (accepting the defendant's argument that if injunctive relief were granted the pecuniary burden on the defendant would exceed the amount in controversy requirement for diversity jurisdiction); Ferris v. General Dynamics Corp., 645 F. Supp. 1354, 1361 (D.R.I. 1986) (finding that in suits seeking primarily equitable relief the "amount in controversy" has historically been calculated by assessing the value to the plaintiffs of conducting their affairs free from the restriction or imposition that they seek to restrain).

Although the determination of whether an adequate amount in controversy exists for diversity jurisdiction is generally assessed from the plaintiff's perspective, the Court is not persuaded that the Miles plaintiffs have met their jurisdictional burden simply because they assign a value to the equitable relief that was sought in the underlying state court litigation within the jurisdictional requirement of the federal court.  In the amount-in-controversy context, a finding that a plaintiff's damages claim was made in "good faith" includes an element of objective good faith.  Coventry Sewage, 71 F.3d at 6.  And as the court's decision in Ferris makes clear, where the plaintiff's claim is for equitable relief "some method must be employed to translate the goal of the litigation into an approximate monetary value."  Ferris, 645 F. Supp. at 1361.

The instant case is distinguishable from the cases upon which the Miles plaintiffs rely in that the Miles plaintiffs have not made any effort to demonstrate the monetary value to these individuals plaintiffs of the equitable relief that was sought in the underlying state court litigation.  By contrast, in Hunt the Supreme Court found that there was evidence in the record that the individual plaintiffs lost sales that could lead to

diminished profits, and that they incurred substantial costs in complying with the statute at issue.  432 U.S. at 347.  But in Ferris, the court found that the amount in controversy requirement was not met because the individual plaintiffs had separate and distinct claims the value of which did not exceed $10,000 in any single case.  645 F. Supp. at 1362-1363.

The Miles plaintiffs rely upon language taken out of context from the decision in Amalgamated Transit Union to support their argument that even if the value of the equitable relief sought in the state court action is not readily determinable the Court should find that the Miles plaintiffs have satisfied their threshold showing for diversity jurisdiction.  In Amalgamated Transit Union, the court found that:

> The value of the arbitration is impossible to determine precisely, because both the terms of the arbitration award and the terms of employment in the absence of arbitration are speculative.  These valuation problems make it virtually impossible to conclude to a legal certainty on the current record that the amount in controversy is less than the required $10,000.

589 F.2d at 10.  The Miles plaintiffs analogize the difficultly in determining the monetary value of the equitable relief sought in the underlying state court case to the imprecise value of the relief sought in Amalgamated Transit Union.

An obvious distinction between the instant case and
Amalgated Transit Union, however, is that in the latter case the
court found that the union had standing to sue in its
representative capacity to vindicate the rights of the employees
to binding interest arbitration under a collective bargaining
agreement.  Id. at 9.  The court further found that there were
convincing reasons to find that the union was entitled to
aggregate the value of its members claims in order to satisfy the
jurisdictional amount requirement.  Id. at 9-10.  Thus, after
stating that it was "virtually impossible to conclude to a legal
certainty on the current record that the amount in controversy is
less than the required $10,000," the court went on to state that
"[t]his is especially so, because of the reasonableness of the
claim that the aggregate interest of the 107 employees exceeds
$10,000."  Id. at 10.  The court noted that the value of a claim
for a cost-of-living factor by itself resulted in a $35,000 total
loss to the employees without considering the value of other
provisions of the former collective bargaining agreement.  Id.
Thus, the court concluded that the union's allegations met the
amount in controversy requirement to support subject matter
jurisdiction over the action.  Id.

Here, the Miles plaintiffs have not brought the instant lawsuit in a representative capacity.  They only have standing to assert their own claims.  The Miles plaintiffs have not provided any basis for a finding that the value of the object of the state court litigation exceeds the amount of $75,000 with respect to each of these three plaintiffs.  Accordingly, the Court finds that the Miles plaintiffs' reliance upon the decision in Amalgamated Transit Union is misplaced.

B.   Attorney Funk's Valuation of a Possible Claim

The Miles plaintiffs argue that the evidence shows that the Funk defendants themselves valued the underlying claims in the state court action in excess of $75,000.  Therefore, they argue, the Funk defendants should not be able to argue otherwise now.  To support their argument, the Miles plaintiffs cite evidence that shows that, in response to an inquiry forwarded by Clarice Neumann, Attorney Funk stated that the "best case" estimate of the value of a proposed claim for excessive maintenance fees against the state court respondents was $240,000.  See Pls.' Statement of Undisputed Facts, Ex. 15.  Attorney Funk added, however, that expecting any recovery on that claim was unrealistic.  More importantly, the evidence makes clear that the

12

claim was not addressed to damages allegedly suffered by the Miles plaintiffs.  Rather, Attorney Funk's estimate took into account the more than 1000 timeshare weeks owned by all of the members of the VWTOA.  The Miles plaintiffs own only seven of those timeshare weeks.  Thus, Attorney Funk's assessment of the proposed excessive maintenance fee claim does not support a finding that the federal court has jurisdiction over the Miles plaintiffs' claims in this action.[3]

## II.   Third-Party Beneficiary Theory

The Miles plaintiffs argue that even if a jury were to conclude that the Funk defendants did not undertake to directly represent them, the evidence supports a finding that the Miles plaintiffs were the intended third-party beneficiaries of Clarice Neumann's attorney-client agreement with the Funk defendants. Under that theory, the Miles plaintiffs argue that they meet the jurisdictional amount in controversy because they are entitled to seek the recovery of the $164,685.20 that Clarice Neumann paid to the Funk defendants for representation in the state court case.

The Miles plaintiff's third-party beneficiary argument fails

---

[3]The Miles plaintiffs' suggestion that merely discussing the proposed excessive maintenance fee claim constitutes a concession that the Funk defendants represented more than one individual in the state court case is without merit.

for two reasons.  First, the Miles plaintiffs have not asserted a cause of action against the Funk defendants on a third-party beneficiary theory in the Complaint.  And second, even if the Miles plaintiffs had asserted a cause of action on a third-party beneficiary theory, the Court would find that their claim fails as a matter of law based on the facts alleged.

Under New Hampshire law, "[a] third-party beneficiary relationship exists if (1) the contract calls for a performance by the promisor which will satisfy some obligation owed by the promisee to the third party, or (2) the contract is so expressed as to give the promisor reason to know that a benefit to a third party is contemplated by the promisee as one of the motivating causes of his making the contract."  Tamposi Assoc. v. Star Mkt. Co., 119 N.H. 630, 633, 406 A.2d 132, 134 (1979).  In order for a benefit to a third party to be found to be a "motivating cause" of entering into a contract, the promisee must intend "to give the beneficiary the benefit of the promised performance." Grossman v. Murray, 144 N.H. 345, 348, 741 A.2d 1218, 1220 (quoting Restatement (Second) of Contracts § 302(1)(b) (1981)). "Unless the performance required by the contract will directly benefit the would-be intended beneficiary, he is at best an

14

incidental beneficiary."  <u>Id.</u> (quoting <u>Public Service Co. of N.H.</u>
<u>v. Hudson Light & Power</u>, 938 F.2d 338, 342 (1st Cir. 1991))
(emphasis in original).  Incidental beneficiaries do not have
enforceable contract rights.  <u>See</u> <u>Public Service Co.</u>, 938 F.2d at
341 n.8.

In the instant case, there are no facts that show that the
Miles plaintiffs were identified beneficiaries to the attorney-
client agreement between Clarice Neumann and the Funk defendants.
Indeed, the Miles plaintiffs argue in their memorandum that:

> Even if there was no evidence that the Defendants were
> aware that they were working on behalf of [the Miles
> Plaintiffs], there is sufficient competent evidence by
> which the Court may reasonably conclude that a third
> party beneficiary contract relationship existed in
> favor of [the Miles plaintiffs].

Document No. 47 at 6.  This argument has no support under New
Hampshire law.  As discussed above, in order for the Miles
plaintiffs to have been the intended beneficiaries of a contract
between Clarice Neumann and the Funk defendants, the contract
must be "so expressed as to give the promisor reason to know that
a benefit to a third party is contemplated by the promisee as one
of the motivating causes of [her] making the contract."  <u>Tamposi</u>,
119 N.H. at 633, 406 A.2d at 134; <u>see also</u> <u>Simpson v. Calivas</u>,
139 N.H. 1, 7, 650 A.2d 318, 322–323 (N.H. 1994) (finding that

where "a client has contracted with an attorney to draft a will and the client has identified to whom he wishes his estate to pass, that <u>identified beneficiary</u> may enforce the terms of the contract as a third-party beneficiary.") (emphasis added).

The evidence in the record upon which the Miles plaintiffs rely to support their argument shows that Clarice Neumann only specifically expressed an intent to benefit the VWTOA.  The record shows that on or about February 11, 2002, Attorney Ramsdell filed a motion to amend the Bill in Equity and an amended petition for injunctive and declaratory relief and damages to assert claims on behalf of Clarice Neumann, "Individually, <u>and derivatively on behalf of Village of Winnipesaukee Timeshare Owners Association.</u>"  Pls.' Statement of Undisputed Facts, Exs. C and D (emphasis added).  After the state court denied the motion to amend, Attorney Ramsdell wrote a letter to Clarice Neumann dated March 19, 2002, in which he stated in pertinent part:

> The original petition that commenced the above-captioned action was filed by [predecessor counsel] on or about November 28, 2000.  That petition asserts numerous claims against [VWTOA], directors, Patrick Basile and others.  <u>We understand that your intent in bringing the lawsuit was to seek equitable relief and damages on behalf of VWTOA and its members, not just yourself</u>.  Unfortunately, the petition contained

> language which mingled concepts of an individual action (benefiting you), a derivative suit (benefiting VWTOA) and a class action (benefiting you and other members), thereby causing confusion as to its purpose [sic].
>
> In February, 2001, [predecessor counsel] sought to clarify the petition and filed a motion requesting that the original petition be amended as follows: each place where the word, "Petitioners", appears it should be changed to the singular "Petitioner", because there was only one person named as plaintiff – you.  Not surprisingly, the motion was unopposed by the defendants and, therefore, granted by the Belknap County Superior Court without a hearing.  <u>The effect of the Court's Order was to terminate your ability to pursue claims on behalf of VWTOA in this action.  It left you as a single plaintiff, seeking damages not for VWTOA, but only for yourself</u>.

Pls.' Statement of Undisputed Facts, Ex. 23 (emphasis added). The Miles plaintiffs are not identified in Attorney Ramsdell's March 19, 2002 letter, or in any of the other evidence upon which the Miles plaintiffs rely to support of their third-party beneficiary argument.  The Miles plaintiffs were no more than incidental beneficiaries to the contract between Clarice Neumann and the Funk defendants, and therefore they did not have any enforceable contract rights.

In sum, the Court finds that even if the Miles plaintiffs had asserted a cause of action against the Funk defendants on a third-party beneficiary theory in their Complaint, their claim would fail as a matter of law.  Thus, the Court further finds

that Miles plaintiffs' third-party beneficiary theory does not

support a finding the Miles plaintiffs meet the jurisdictional

amount in controversy.

III. <u>Limited Plaintiffs With Preserved Rights</u>

As a third theory supporting subject matter jurisdiction,

the Miles plaintiffs make the following assertions: (1) the Funk

defendants must have believed that they represented multiple

plaintiffs because they moved to amend the Bill in Equity in

February 2002 in order to file a derivative suit; (2) the

equitable relief that was sought in the state court action was

indivisible and the Miles plaintiffs are the only individuals to

have preserved their rights to pursue such claims; and (3) "the

Court can analyze damages especially in regard to legal fees as

inuring to the benefit <u>only to three Plaintiffs in the instant</u>

<u>case</u>."  Document No. 47 at 10 (emphasis in original).  The Miles

plaintiffs' argument contains a premise that is legally

incorrect, and is unsupported by any legal authorities.

As a matter of law, a derivative action is not brought on

behalf of individuals.  Rather, a derivative action is brought to

enforce a right of a corporation or of an unincorporated

association where the corporation or association has failed to

enforce a right that it could properly assert.[4]   Therefore, the
Miles plaintiffs are incorrect in asserting that the Funk
defendants must have believed that they represented multiple
plaintiffs because they moved to amend the Bill in Equity to add
a derivative action.

Furthermore, there is no support for the Miles plaintiffs'
argument that since they are the only members of the VWTOA to
have filed suit against the Funk defendants that the rights of
the VWTOA is transferred to the Miles plaintiffs.   The Court
finds no basis to conclude that any claim that the VWTOA might
have had against the Funk defendants has been transferred to the
Miles plaintiffs.   Therefore, the Court finds that the Miles
plaintiffs' "limited plaintiffs with preserved rights" theory

---

[4]See e.g., Rule 23.1, which provides in pertinent part:

In a derivative action brought by one or more
shareholders or members to enforce a right of a
corporation or of an unincorporated association, the
corporation or association having failed to enforce a
right which may properly be asserted by it, the
complaint shall be verified and shall allege (1) that
the plaintiff was a shareholder or member at the time
of the transaction of which the plaintiff complains . .
., and (2) that the action is not a collusive one to
confer jurisdiction on a court of the United States
which it would not otherwise have.

Fed. R. Civ. P. 23.1 (emphasis added).

does not support a finding that the federal court has subject
matter jurisdiction over their state law claims.

IV.   <u>Assignment of Clarice Neumann's Claims</u>

        The Miles plaintiffs argue in their fourth and fifth
theories that Clarice Neumann assigned her claims against the
Funk defendants to the Miles plaintiffs.  The Miles plaintiffs
assert that Clarice Neumann has acknowledged and supported their
attempt to recover the legal fees that she paid to the Funk
defendants as part of the damages in this case, which the Miles
plaintiffs argue represents an "implicit assignment."  The Miles
plaintiffs further argue that the Clarice Neumann has since
signed a "Confirmatory Assignment," which the Miles plaintiffs'
submitted with their response to this Court's Order to Show Cause
on the jurisdictional issue.

        The subject matter jurisdiction test is based on the facts
that existed at the time the suit was filed.  <u>See</u> <u>Spielman</u>, 251
F.3d at 5.  Here, there is no allegation in the Complaint, or in
the Miles plaintiffs' interrogatory responses, that identifies an
assignment of Clarice Neumann's claims against the Funk
defendants.  Moreover, the record shows that at her deposition,
Ms. Neumann denied that she had assigned any legal malpractice

claim that she might have against the Funk defendants to the
Plaintiffs.  Ms. Neumann testified:

> Q.   Whether you thought about it or not, that is
> bringing a claim against [the Funk defendants] on your
> own behalf, you didn't talk to anybody else about doing
> it.  Is that right?
>
> A.   I didn't think about it and I didn't talk about
> it.  You're talking about a malpractice claim?
>
> Q.   Yes.  Okay.  Have you assigned any claims you
> might have against [the Funk defendants] to anybody
> else?
>
> A.   No.

See Document No. 47, att. 4 at 74.  The Court finds that the
foregoing evidence demonstrates that no assignment of Clarice
Neumann's claims to the Miles plaintiffs existed at the time the
instant lawsuit was filed.  The Miles plaintiffs' attempt to
avoid that conclusion are unpersuasive.  Therefore, the Court
finds that the Miles plaintiffs' assignment of claims argument is
insufficient to support a finding that amount in controversy
requirement was met at the time that this lawsuit was filed.

V.   Multiple Damages and Attorney's Fees

Finally, the Miles plaintiffs argue that the amount in
controversy is at least $164.685.20 based on the amount that
Clarice Neumann paid to the Funk defendants pertaining to the

state court action, and that the Miles plaintiffs further seek multiple damages and attorney's fees under the provisions of N.H. Rev. Stat. Ann. ("RSA") 358-A:10 based on their claim that the Funk defendants have engaged in unfair and deceptive practices.[5]

Here, the evidence shows that all of the acts allegedly committed by the Defendants were taken in the course of their legal practice and occurred prior to July 17, 2002.  Defendants argue that Plaintiffs' RSA 358-A claim must fail because prior to July 17, 2002, the practice of law was not covered by the statute.  The Court agrees.

In Averill v. Cox, 145 N.H. 328, 332, 761 A.2d 1083, 1087 (2000), the New Hampshire Supreme Court reaffirmed its earlier holding that the practice of law is excluded from the scope of RSA 358-A.  The New Hampshire Legislature has since amended the statute's provisions so that the practice of law is no longer excluded from coverage under the Act, but that amendment did not become effective until July 17, 2002.  See Copp v. Atwood, No.

_____

[5]The Miles plaintiffs state in a footnote to their memorandum responding to the Order to Show Cause that they also assert a right to recover attorney's fees in the present action because of the Funk defendants' bad faith conduct under Harkeem v. Adams, 117 N.H. 687, 691 (1977).  Document No. 47 at 14 n.4. The Court does not find any such claim in the Complaint. Furthermore, this argument is referred to only perfunctorily and is therefore ignored.

Civ. 03-288-JD, 2005 WL 139180 at *4 (D.N.H. Jan. 24, 2005).

Thus, the Miles plaintiffs' RSA 358-A claim fails to state a

cause of action upon which relief may be granted.

<u>Conclusion</u>

For the foregoing reasons, the Court dismisses Counts II

through XI of the Complaint without prejudice for lack of subject

matter jurisdiction.  The Court dismisses Count XII of the

Complaint with prejudice based on the failure to state a claim

upon which relief may be granted.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date: July 20, 2006

cc:   Evan M. Fray-Witzer, Esq.
      Russell F. Hilliard, Esq.
      Michael C. McLaughlin, Esq.

23